IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM GILSON, | ) |
| Plaintiff, | ) Case No. 1:12-cv-00002 |
| v. | ) Judge Mark R. Hornak |
| THE PENNSYLVANIA STATE POLICE, an agency of the COMMONWEALTH OF PENNSYLVANIA, *et al.*, | ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

In this civil action, Plaintiff William Gilson, a former Pennsylvania State Trooper, alleges that his rights under federal and state law were violated when he was terminated from his employment with the Pennsylvania State Police ("PSP"). The named Defendants include the PSP as well as several current or former PSP officers. The Court's subject matter jurisdiction is premised upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

Presently pending before the Court is Plaintiff's motion for leave to file a third amended complaint (ECF No. 42). For the reasons that follow, Plaintiff's motion will be granted.

### I. PROCEDURAL HISTORY

This action was commenced on January 6, 2012 with the filing of Plaintiff's complaint (ECF No. 1). This original pleading asserted five causes of action as follows: claims asserted under 42 U.S.C. § 1983 for the alleged denial of procedural due process (Count 1) and equal protection (Count II); a claim under 42 U.S.C. § 300bb-3 for alleged interference with rights protected by the Consolidated Omnibus Budget Reconciliation Act ("COBRA") (Count III); and

1

claims under Pennsylvania state law for defamation (Count IV) and intentional infliction of emotional distress (Count V). (See Pl.'s Compl. at ¶¶ 110-172.) The case was originally assigned to then United States District Judge Sean J. McLaughlin.

After Defendants filed a motion to dismiss (ECF No. 13), Plaintiff filed his First Amended Complaint ("FAC") on April 30, 2012 (ECF No. 16). In this pleading, Plaintiff added a claim, pursuant to 42 U.S.C. § 1985, asserting that the Defendant officers had conspired to deny him his equal protection rights. (See Pl.'s FAC at ¶¶ 202-214.) Defendants then filed a motion to dismiss the First Amended Complaint (ECF No. 20), and Plaintiff filed his response and brief in opposition to that motion (ECF Nos. 24 and 25). Oral argument was scheduled for October 19, 2012. (See Text Order of 8/14/12.)[1]

Thereafter, Plaintiff filed a motion for leave to file a Second Amended Complaint (ECF No. 30), which was granted on November 16, 2012 (ECF No. 32). Plaintiff's Second Amended Complaint ("SAC") (ECF No. 33) retained all of the claims previously asserted and added four additional ones: *i.e.*, two Title VII claims premised on alleged sex discrimination (Count VII) and hostile work environment (Count VIII), and two claims under the Pennsylvania Human Relations Act invoking those same theories (Counts IX and X). (*See* Pl.'s SAC at ¶¶ 269-427.) Defendants filed their answer to the Second Amended Complaint on January 31, 2013 (ECF No. 37) and, thereafter, the parties continued to engage in discovery.

On August 6, 2013, Plaintiff filed the pending motion for leave to file a Third Amended Complaint (ECF No. 42). Plaintiff's proposed Third Amended Complaint ("TAC") (ECF No. 42-2) seeks to add two additional § 1983 claims based upon the alleged denial of Plaintiff's procedural due process rights. Specifically, proposed Count XI asserts that the putative basis for

---

[1] It is not clear from the docket whether argument was ever held, as there is no minute entry reflecting that fact.

Plaintiff's termination – *i.e.*, his alleged commission of a "serious act of deception" – is an arbitrary standard which is void for vagueness both facially and as applied in this case. (*See* Pl.'s TAC at ¶¶ 428-438.) Proposed Count XII names two new PSP officials as Defendants and asserts that these officials, along with certain other Defendants, deprived Plaintiff of a protected liberty interest in future employment by erroneously informing Plaintiff's prospective employers that he was discharged for sexual harassment and sexual impropriety and that these charges were upheld in arbitration. (*See id.* at ¶¶ 439-457.) Defendants filed their response to the instant motion (ECF No. 47) on September 5, 2013,[2] arguing that leave for further amendment of the Complaint should be denied because the proposed amendments would be futile.

In the meantime, this case had been transferred to the undersigned. The issues raised by Plaintiff's motion have been adequately joined and the matter is ripe for disposition.

## II. DISCUSSION

Rule 15 of the Federal Rules of Civil Procedure provides that district courts "should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, courts may deny leave where there is a finding of undue delay, bad faith, prejudice to the opposing party, or futility. *See Jang v. Boston Scientific Scimed, Inc.*, --- F.3d ---, 2013 WL 4752020 at * 9 (3d Cir. Sept. 5, 2013) (*citing Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir.2001)).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (*citing Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

---

[2] Plaintiff has filed a motion to strike Defendants' response as untimely, given that it was filed ten days after the deadline established by the Court's briefing order (ECF No. 48). In light of the Court's disposition of the instant motion for leave to amend, Plaintiff's motion to strike will be denied as moot.

3

Accordingly, in assessing "futility," we apply the same standard of legal sufficiency as would apply under Federal Rule of Civil Procedure 12(b)(6). *Id.* Pursuant to this standard, dismissal of a claim is appropriate only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the Plaintiff, the court finds that the Plaintiff's claim lacks facial plausibility. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although the Court must accept the allegations in the Complaint as true, "[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cr. 2013) (*quoting Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007)).

When the foregoing standard is applied, the following alleged facts and/or reasonable inferences (which are, of course, at this time only allegations and not concluded facts) can be gleaned from the Third Amended Complaint:

- Plaintiff worked for the Pennsylvania State Police ("PSP") for some sixteen years, during which time he undertook significant responsibilities and had a favorable employment record. Plaintiff served at PSP Troop E Headquarters in Erie, Pennsylvania, and his commanding officer was Captain Mark Schau (now Major Schau), one of the named Defendants in this case. (TAC ¶¶ 3, 23, 26-37, 108, 114, 131.)

- Defendant William Sibbald, Jr. is a member of PSP Troop E who served with Plaintiff. Trooper Sibbald developed a personal animus toward Plaintiff and made numerous disparaging remarks about Plaintiff to fellow officers, including comments to the effect that Plaintiff was a "freak" and a "pervert," that Plaintiff should not be a member of the PSP, and that Defendant Sibbald would not trust Plaintiff to back him up during an incident. (Id. at ¶¶ 9, 42-47, 89-90.)

- On or about August 17, 2009, PSP officers, including Plaintiff and Defendant Sibbald, were summoned to a mobile home park for the purpose of detaining a mental patient who had refused to take his medication and who required a mental health commitment. Among those present at the scene was a crisis worker by the name of Sandra Grgic. (Id. at ¶¶ 50-51.)

- After the matters at the mobile home park were completed, and as Plaintiff and Grgic were walking to their vehicles, Plaintiff briefly touched the Grgic's elbow in order to attract her

attention so that he could speak with her matter-of-factly about which hospital would receive the patient. (Id. at ¶¶ 52-53.)

- Although Grgic did not initially complain about the incident, she later filed a complaint with the PSP after Sibbald contacted her and urged her to do so. In her complaint, Grgic inaccurately claimed that, while walking to her car, Plaintiff had walked alongside of her, engaged her in conversation, put his left arm around her waist, and pulled her close for an instant – conduct which did not, in fact, occur. (Id. at ¶¶ 54, 57-62, 65-75.)

- On August 31, 2009, Defendant Sibbald provided a letter to his Commanding Officer falsely claiming that Plaintiff had inappropriately touched Grgic by placing his arm around her waist and pulling her toward him. (Id. at ¶¶ 76-77.)

- During an ensuing investigation by the PSP's Internal Affairs Division ("IAD"), Plaintiff was interviewed twice (on October 26 and November 18, 2009) and denied any wrongdoing numerous times in response to the same or similar questions. Plaintiff was never provided notice that testifying in his own behalf could result in discipline up to and including discharge. (Id. at ¶¶ 78-79, 101-102.)

- No investigation was conducted by the IAD as to the possible motives Sibbald and/or Grgic may have had for their respective involvement in soliciting and filing the complaint against Plaintiff. In addition, the IAD failed to contact a civilian eye witness who possessed potentially exculpatory information. (Id. at ¶¶ 80-96.)

- Following the completion of the IAD's investigation, Defendant Schau issued a Disciplinary Report concluding that Plaintiff had committed "improper on-duty conduct" based on his finding that Plaintiff, "while speaking with a crisis service worker grabbed her waist pulling her against him." (Id. at ¶¶ 98-99.) Defendant Schau further concluded that Plaintiff was "less than truthful during *several* interviews conducted during this investigation," even though Plaintiff was only interviewed on two occasions. (Id. at ¶ 100 (emphasis in the original).) In arriving at his conclusions, Defendant Schau ignored facts and witness statements which exculpated Plaintiff. (Id. at ¶ 101.)

- On November 9, 2010, Defendant Kyle Teter, a sergeant in the Internal Affairs Division, issued a Notice of Disciplinary Penalty recommending that Plaintiff be terminated. (Id. at ¶ 5, 108.) In making this recommendation, Defendant Teter secured the consent of Major Lisa Christie, who is also a named Defendant in this case. (Id. at ¶¶ 7, 109.) Defendants Teter and Christie not only ignored facts and witnesses evidencing Plaintiff's innocence but also added a laundry list of alleged infractions, including "Unbecoming Conduct," "Discrimination or Harassment," "Sexual Impropriety," and "Providing False Information." (Id. at ¶¶ 110-111.)

- As a result of the Notice of Disciplinary Penalty, Plaintiff was immediately suspended without pay as of November 15, 2010. (Id. at ¶ 114.)

- After filing a timely grievance, Plaintiff attended an arbitration hearing. At the hearing, Grgic was unable to identify Plaintiff as the individual who allegedly had touched her inappropriately. She also gave testimony inconsistent with her prior statements as to which side of her had been touched. Grgic stated at the hearing that she was never fearful of Plaintiff. Moreover, she had never complained about Plaintiff's conduct at the scene of the

- incident or immediately thereafter the hospital, despite the presence of others during that time. (Id. at ¶¶ 116-122.)

- At the arbitration hearing, Defendant Sibbald falsely testified that Gilson had placed his arm around Grgic's waist and pulled her toward him for an instant. These false statements were motivated by Sibbald's personal animus against Gilson. (Id. at ¶¶ 123-124.)

- On May 2, 2011, the Arbitrator denied Gilson's grievance and upheld the termination decision, as a result of which Plaintiff was dishonorably discharged from the PSP. (Id. at ¶¶ 131, 145.)

- At all times during the investigation and the arbitration, Plaintiff told the truth about the incident in question. Nevertheless, in his ruling, the Arbitrator accepted Grgic's version of events and concluded that Plaintiff must have "lied" during the investigation and that such "serious deception" justified his termination. (Id. at ¶¶ 134-135, 137, 152.) Critically, however, the Arbitrator did not find that the alleged act of touching constituted sexual harassment or sexual impropriety or that, in and of itself, [the alleged touching] warranted termination. (Id. at ¶ 136.)

- As a result of his unwarranted termination from PSP, Plaintiff has suffered damages, including the loss of back pay and benefits. Plaintiff has also suffered from reputational harm which has resulted in him being "blacklisted" from employment with the Commonwealth and prevented him from finding employment. (Id. at ¶ 156.)

Count XI of Plaintiff's proposed Third Amended Complaint asserts a claim under 42 U.S.C. § 1983[3] against Defendants Schau, Teter, and Christie for the alleged violation of Plaintiff's federal procedural due process rights. In support of this claim, Plaintiff avers that he "was not given fair notice prior to the interviews in question that by providing and/or by repeatedly providing his version of events he could be found to have committed 'a serious act of deception' necessitating automatic termination of his employment regardless of any mitigating circumstances." (TAC ¶ 429.) It is further alleged that:

---

[3] Section 1983 affords a private right of action as against:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...

42 U.S.C. §1983.

6

430. This "serious act of deception" standard applied by Defendants is not sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties consonant alike with ordinary notions of fair play and the settled rules of law.

431. Indeed, persons of common intelligence must necessarily guess at the meaning of the "serious act of deception" standard and differ as to its application.

432. In this lawsuit during discovery, the PSP has admitted that the "serious act of deception" standard is arbitrary and that individuals entrusted with enforcing the standard have to guess as to its meaning and differ as to its application.

433. The "serious act of deception" standard is vague on its face and as applied to [Plaintiff].

434. The PSP has no definition of what a "serious act of deception" is, yet the PSP dismissed [Plaintiff] for allegedly violating that standard.

435. This standard also was vague as applied to [Plaintiff] because it was inconsistent with the administrative warning given to Plaintiff prior to his interviews that he was required to answer questions truthfully and completely or he "may be subjected to administrative action" (and not necessarily to automatic termination).

436. The application and continued application of the "serious act of deception" standard under the circumstances violates Due Process.

437. [Plaintiff] has been subjected to a standardless deprivation.

(TAC ¶¶ 428-437.)

Defendants have claimed that Plaintiff's addition of proposed Count XI would be futile and therefore should not be permitted. As the parties opposing Plaintiff's motion for leave to amend, Defendants bear the burden of establishing futility. *See Romero v. Allstate Ins. Co.*, Civil Action No. 01-3894, 2010 WL 2996963 at *4 (E.D. Pa. July 28, 2010) ("Given the liberal standard for the amendment of pleadings, ... 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'") (*quoting Aruanno v. New Jersey*, No. CIV. A. 06-296, 2009 WL 114556, at *2 (D.N.J. Jan. 15, 2009)). This burden is substantial: "[i]f a proposed amendment is not *clearly* futile, then denial of leave to amend is improper." *Id.* (quoting 6 Wright, Miller & Kane, Federal Practice and Procedure §1487 (2d ed.1990)) (emphasis in the original). *See also Pohl v. U.S. E.P.A.*, Civil Action No. 09-1480, 2010 WL

7

2607476 at *3 (W.D. Pa. June 25, 2010) (noting, that, while courts have the discretion to refuse an amendment that would be futile, the party opposing the amendment faces a "heavy burden" in establishing futility).

In support of their futility argument, Defendants argue that "Plaintiff, a former State Trooper, cannot seriously contend that he did not know that lying during an official State Police internal investigation into his misconduct could lead to discipline." (Defs.' Resp. to Mot. for Leave to File Third Amended Compl. [ECF No. 47] at p. 4, ¶ 8.) Defendants contend that this is "especially true" in light of three "facts," *to wit*: (1) "lying is one of the twelve so-called 'deadly sins' within the Pennsylvania State Police (PSP) that can get one fired"; (2) the PSP Internal Affairs Division investigator concluded that Plaintiff had lied seventeen times during the course of the investigation; and (3) Plaintiff "had been previously disciplined for selling overtime and lying about it." (Id. at pp. 4-5, ¶ 8.)

This argument does not persuade the Court that leave for further amendment may be denied. Whatever merit there may be in Defendants' arguments (a point which the Court cannot presently decide), Defendants' arguments rely on facts outside of the Third Amended Complaint. However, the futility of a proposed amendment must be evident from the pleading itself. *See, e.g., Lincoln General Ins. Co. v. Kingsway America* Agency, *Inc.*, Civil No. 1:11-CV-1195, 2013 WL 214634 at *4 (M.D. Pa. Jan. 18, 2013) ("Futility of amendment may only serve as a basis for denial of leave to amend where 'the proposed amendment is frivolous or advances a claim that is legally insufficient on its face.'") (*quoting Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)) (internal quotation omitted); *Getz v. State Farm Ins. Co.*, Civil Action No. 3:12-CV-82, 2012 WL 5288795 at *2 (W.D. Pa. Oct. 24, 2012) (noting that an amendment would be clearly futile if it "advances a claim or defense that is legally insufficient

8

on its face.") (citation omitted). Defendants' legal challenges to Count XI raise arguments that are better addressed on a more fully developed record. Accordingly, in light of Rule 15(a)'s liberal standard which favors the amendment of pleadings and Defendants' failure to satisfy their heavy burden of demonstrating futility, Plaintiff must be permitted to amend his Complaint to add proposed Count XI.

Plaintiff's Third Amended Complaint also seeks to add a twelfth cause of action under §1983 for the alleged deprivation of Plaintiff's protected liberty interest in future employment. In addition to naming Schau, Christie, and Teter as Defendants, proposed Count XII would add two new Defendants: Frank Noonan, Commissioner of the PSP and Deborah Facciolo, the PSP's Human Resources Director. In relevant part, Count XII avers the following:

> 441. Defendants' actions imposed on Plaintiff a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities and which might seriously damage his standing and associations in his community.
>
> 442. For example, Defendants stated and/or misled others to believe that Plaintiff was terminated for having committed sexual harassment and sexual impropriety and that those charges were upheld in arbitration.
>
> 443. In fact, at the arbitration hearing, the PSP did not prove the charges of violating the AR 4-26 Sexual Harassment policy and no evidence was presented of any internal EEOC finding or sexual harassment or sexual impropriety.
>
> 444. The arbitrator made no findings or rulings that Plaintiff in fact had committed sexual harassment or sexual impropriety.
>
> 445. The alleged physical contact even if true – which is denied – did not rise to the level of either sexual harassment or sexual impropriety under the PSP's Field Regulations.
>
> 446. In discovery in this lawsuit, the alleged victim made clear that she was not sexually harassed; nor did she consider herself to have been sexually harassed by [Plaintiff].
>
> 447. Nevertheless, Defendants brazenly, callously, and publicly disseminated the stigmatizing information to outsiders, including but not limited to, future employers including but not limited to the Department of Labor & Industry (Office of Unemployment Compensation benefits, Erie UC Service Center), the PA Liquor Control Board (Regional Operations), and the Department of Public Welfare (Erie County Public Assistance Office).

***

> 452. The published information that Plaintiff was terminated for committing sexual harassment and sexual impropriety which purportedly was upheld following an arbitration was substantially and materially false and/or misleading.
>
> 453. Prospective employers have refused to hire Plaintiff based on the Defendants' misrepresentations that Plaintiff was terminated for committing sexual harassment and sexual impropriety and that those charges were upheld following arbitration.
>
> 454. This is an ongoing federal violation because if Defendants are not prevented from continuing to tell prospective employers (including Commonwealth agencies) that Plaintiff was guilty of sexual harassment and sexual impropriety, Plaintiff will continue to suffer reputation[al] damage and harm to his future employment opportunities.
>
> \*\*\*
>
> 457. Commissioner Noonan and Ms. Facciolo in their official capacities can provide the necessary prospective injunctive relief for the ongoing federal violation.

(TAC at ¶¶ 441-457.)

Defendants oppose the addition of Count XII on two grounds, neither of which is sufficient to establish futility of the proposed amendment. They first argue that Plaintiff has mistakenly implied that the arbitrator found no sexual misconduct had occurred when, in fact, this is not the case because the arbitrator did not reach the issue of sexual misconduct. Defendants' argument misconstrues the nature of Plaintiff's allegations. The gist of Plaintiff's grievance in Count XII is that the Defendants published false information about him which stigmatized him and resulted in lost employment opportunities. The false information about which Plaintiff complains is the Defendants' alleged affirmative misrepresentation that he had been terminated for *sexual* harassment and *sexual* impropriety *and that those charges were upheld by the arbitrator.* Defendants' observation that, in fact, the arbitrator never reached the sexual harassment issue assertedly proves Plaintiff's point and is therefore not inconsistent with his allegations in Count XII.

Defendants next argue that it is irrelevant whether the arbitrator reached the sexual harassment issue because the PSP investigated the issue and concluded that such misconduct had

occurred. According to Defendants, "[t]he ultimate issue for futility analysis purposes is not whether Plaintiff or even the victim thinks that he engaged in inappropriate behavior, but rather, whether the PSP has a good faith basis to think otherwise." (Defs.' Resp. to Mot. for Leave to File Third Amended Compl. [ECF No. 47] at pp. 6-7, ¶ 13.) This argument misses the mark, at least at this point.

Both Plaintiff and Defendants agree that to prove a deprivation of a protected liberty interest in future employment, Plaintiff must demonstrate, among other things, that Defendants published information about him which was "substantially and materially false or misleading." (*See* Pl.'s Br. in Supp. of Mot. for Leave to File Third Amended Compl. [ECF No. 43] at p. 8; Defs.' Resp. to Mot. for Leave to File Third Amended Compl. [ECF No. 47] at p. 6, ¶ 13) (citing to *Codd v. Velger*, 429 U.S. 624 (1977) and *Ersek v. Township of Springfield*, 102 F.3d 79 (3d Cir. 1996)). It bears repeating that the "substantially and materially false or misleading" information which forms the basis of Count XII is Defendants' alleged statements that Plaintiff had been terminated for *sexual* harassment and *sexual* impropriety and that those charges *were upheld in arbitration*. As Defendants have acknowledged, the arbitrator did not reach that issue, and this fact is, if anything, supportive of Plaintiff's newest allegations. Defendants' observation that the arbitrator never found the allegations of sexual misconduct to be false or misleading is, therefore, seemingly beside the point. Because Defendants have failed to offer any basis supportive of a finding that Plaintiff's proposed Count XII is facially futile, the amendment must be permitted.

## III. CONCLUSION

Based upon the foregoing discussion, Plaintiff's Motion for Leave to File Third Amended Complaint (ECF No. 42) must be granted under the prevailing law in this Circuit, and his Motion to Strike (ECF No. 48) therefore denied as moot.[4]

An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: October 16, 2013

cc: All counsel of record

---

[4] That said, the Court finds it striking that the Plaintiff is claiming the Defendants committed a dozen separate, intentional constitutional or statutory state and federal "torts" in dismissing him from duty with the PSP. As is also the case when the Court confronts an Answer containing a score (or more) of distinct and often boilerplate affirmative defenses, one is left to wonder how plausible it is that so many disparate and varied legal principles are in play at one time, and whether this action truly represents the exceptional case in which the Defendants acted individually (and in concert) to violate a dozen distinct legal rights of the Plaintiff.