IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WILLIAM GILSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Case No. 1:12-cv-00002 |
| v. | ) ) | Judge Mark R. Hornak |
| THE PENNSYLVANIA STATE POLICE, an agency of the COMMONWEALTH OF PENNSYLVANIA, et al., | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

### I.     BACKGROUND

In this civil action the Plaintiff William Gilson, a former Pennsylvania State Trooper, has sued the Pennsylvania State Police ("PSP") and certain of its present or former agents for alleged wrongful acts committed in connection with the termination of his employment. Following his termination, Plaintiff filed a grievance and the matter went to arbitration. In preparation for the arbitration hearing, PSP's lawyer (an attorney from the Governor's Office of General Counsel ("OGC")) generated approximately 28 pages of notes. These included questions she intended to ask the witnesses as well as her mental impressions concerning certain aspects of the case.

After Plaintiff's termination was upheld by the arbitrator, this litigation ensued. The Defendants are now represented by Robert Willig, Esq., from the Office of the Attorney General ("OAG"). In connection with its defense of the case, the OAG requested that PSP provide all pertinent documentation within its possession. Among the materials produced to OAG were the notes which PSP's arbitration counsel had drafted in preparation for the arbitration proceeding.

These notes were later inadvertently produced to the Plaintiff on or about December 18, 2012 as part of discovery in this case. Ten months later, on October 11, 2013, Plaintiff's counsel utilized four pages of the notes in connection with the deposition of Marc Noce, a former State Trooper who was one of the original named defendants in this case.[1] Mr. Noce was asked about the notes but did not know who had authored them. Consequently, Plaintiff's counsel sent an interrogatory to PSP on October 21, 2013 inquiring as to the identity of the author. After consulting with PSP, the OAG learned that the subject documents were part of the PSP lawyer's handwritten notes.

On October 30, 2103, defense counsel wrote a letter to Plaintiff's counsel identifying the documents and asking for their return, along with any other notes of the PSP attorney that were in Plaintiff's possession. Plaintiff declined this request, and Defendants thereafter filed a motion pursuant to Federal Rule of Evidence 502 and/or Local Rule 16(1)(D) to get the subject material back (ECF No. 60). Plaintiff then filed his response to the motion (ECF No. 62).

## II. STANDARD OF REVIEW

Rule 502 provides, in relevant part, that, when an inadvertent disclosure of privileged material is made in a federal proceeding, the disclosure does not operate as a waiver if:

(1) the disclosure is inadvertent;

(2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and

(3) the holder promptly took reasonable steps to rectify the error, including (if applicable), following Federal Rule of Civil Procedure 26(b)(5)(B).[2]

---

[1] During his tenure with PSP, then Trooper Noce had been assigned to the Internal Affairs Division. He was the individual assigned to investigate allegations of misconduct on the part of Plaintiff that eventually led to his termination. Although originally named as a Defendant, Mr. Noce was terminated from the case on February 13, 2012.

[2] Federal Rule of Civil Procedure 26(b)(5)(B) provides as follows:

2

Fed. R. Evid. 502(b). The analysis actually involves a two-step process: "'[f]irst, it must be determined whether the documents in question were privileged or otherwise protected and second, if privileged documents are produced then a waiver occurs unless the three elements of FRE 502(b) are met.'" *Wise v. Washington Cty.*, Civil Action No. 10-1677, 2013 WL 4829227, at *2 (W.D. Pa. Sept. 10, 2013) (*quoting Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, Civ. No. 09-261, 2009 WL 3319820, at *2 (W.D. Pa. 2009)) (alteration in the original). The disclosing party has the burden of proving that each of Rule 502(b)'s elements has been satisfied. *Wise*, 2013 WL 4829227, at *2 (citing *Rhoades*, 2009 WL 33319820, at *2).

Courts in this circuit also consider the following related (and somewhat overlapping) factors in determining whether waiver has occurred: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production; (2) the number of inadvertent disclosures; (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure; and (5) whether the overriding interests of justice would or would not be served by relieving the party of its errors. *See Wise*, 2013 WL 4829227, at *2 (W.D. Pa. Sept. 10, 2013) (*citing Rhoades*, 2009 WL 3319820, at *2 and *Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242, 247 (W.D. Pa. 2012)); *Carlson v. Carmichael*, Civil Action No. 10-3579, 2013 WL 3778356, at *2 (E.D. Pa. July 19, 2013) (citing Fed. R. Evid. 502 Advisory Committee's Note; *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 219 (E.D. Pa. 2008)).

---

If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

## III. ANALYSIS

### A. Protected Status

In this case, the Defendants are claiming protection of the disclosed materials under the attorney work product doctrine. It "'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *Shire LLC v. Amneal Pharm. LLC*, Civil Action No. 2:11–cv–03781 (SRC) (CLW), 2014 WL 1334225, at *1 (D.N.J. April 1, 2014) (*quoting United States v. Nobles*, 422 U.S. 225, 238 (1975) and *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir.1988)). The Third Circuit utilizes a two-part test for ascertaining whether a document is protected under the work-product doctrine: first, the court determines whether litigation could reasonably have been anticipated at the time the document was created; second, the court determines whether the document was prepared primarily for the purpose of litigation. *See Graco, Inc. v. PMC Global, Inc.*, Civil Action No. 08–1304 (FLW), 2011 WL 666048, at *18 (D.N.J. Feb. 14, 2011) (citing authority). The work product privilege is codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure, which generally prevents discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative..." absent a showing by the requesting party of "substantial need for the materials to prepare its case" and an inability, "without undue hardship, [to] obtain their substantial equivalent by other means." *Id.*, at *17 (quoting Fed.R.Civ.P. 26(b)(3)(A)).

In this case, Plaintiff does not dispute that the notes in question constitute protected material. Although the subject documents are not currently of record, the parties' description of the documents strongly suggests that the work product doctrine would apply to the material in question. According to the Plaintiff, the subject documents involve approximately 28 pages of

4

handwritten notes generated by PSP's arbitration counsel which consist of the following: (a) questions which the attorney intended to ask Plaintiff on cross examination at the arbitration hearing; (b) notes of interviews that the attorney conducted with a number of witnesses in the case; and (c) notes made on a letter that was addressed to arbitration counsel herself. (*See* Pl.'s Resp. Opp'n Defs.' Mot. Filed Pursuant to F.R.E. 502 or Local Rule 16(1)(D) 2, ECF No. 62.)

### B. Waiver

If the documents in question are attorney work product, then a Rule 502(b) analysis is necessary. There is no dispute with regard to the first Rule 502(b) factor, as both sides appear to agree that the disclosure here was inadvertent.

The second Rule 502 factor requires the Court to consider whether the Defendants took reasonable measures to prevent disclosure of the materials in the first place. As to this point, the Defendants offer the following averment:

> [T]he OAG took reasonable steps to prevent disclosure. As mentioned above, when a suit is filed the OAG retrieves the pertinent documentation from the state agency involved. This occurred in the instant case as the OAG received documentation from the PSP. When the Plaintiff's discovery request arrived, OAG personnel reviewed the documentation page by page to see what was discoverable. The handwritten notes have no indicia of authorship or any other indication that would have alerted personnel that these notes were privileged as opposed to, for example, notes completed by the investigator who completed the PSP Internal Affairs Division (IAD) investigation into Plaintiff's misconduct. In short, there was nothing obvious in the documentation that would have alerted OAG personnel to the privileged nature of these documents.

(Defs.' Mot. at ¶ 7.)

Initially, the Court must consider whether further record development is appropriate in order to assess the Defendants' proffer. In most of the reported cases addressing claw-back motions under Rule 502(b), the courts have made rulings following oral argument, *see, e.g., Wise v. Washington County*, 2013 WL 4829227, at *1; *Carlson v. Carmichael*, 2013 WL 3778356, at *2; *United States v. Sensient Colors, Inc.*, Civil No. 07-1275(JHR/JS), 2009 WL 2905474, at *1

5

(D.N.J. Sept. 9, 2009); *Peterson v. Bernardi,* 262 F.R.D. 424, 426 (D.N.J. 2009), or after conducting an evidentiary hearing, *see Stewart Title Guar. Co. v. Owlett & Lewis, P.C.,* 297 F.R.D. 232, 238 (M.D. Pa. July 18, 2013), or with the benefit of an attorney's verified statement, *see Rhoades v. Young Women's Christian Association of Greater Pittsburgh,* Civil Action No. 09-261, 2009 WL 3319820 *2-3 (W.D. Pa. Oct. 14, 2009). In this case, the Court does not have the benefit of a detailed proffer from counsel or any sworn statement from the individual who actually conducted the document review, nor have the subject documents been submitted to the Court for inspection.

Considering only the motion papers alone, the Defendants have not at this point fulfilled the second Rule 502(b) factor. Defendants aver that "OAG personnel" reviewed the documents in PSP's file "page by page" in order to determine what was discoverable. As Plaintiff points out, however, the Defendants have offered nothing to indicate how defense counsel or any attorney in the OAG's office supervises his or her subordinates or whether he or she performs a final review prior to transmission in order to guard against inadvertent disclosures. This type of deficiency was found to trigger a waiver of the attorney-client privilege in *Wise, supra.* In that case, Judge Fischer made the following observations:

> Defendants have presented little evidence about the precautions taken to prevent the inadvertent disclosure. Mr. Joyal [the defense attorney] explains that it is the practice of his office to scan all documents received in a case in order to easily attach them to e-mails and court filings. (Docket No. 156, at ¶ 7). Because his usual secretary had been on vacation at the time the inadvertent disclosure were made, he believes that all the inadvertently disclosed documents were e-mailed to Plaintiff's counsel by a substitute secretary. (Docket No. 156, at ¶ 15). Nothing in his affidavit indicates how he supervises his subordinates or whether he performs a final review prior to transmission in order to guard against inadvertent disclosures. During oral argument,[ ] Mr. Joyal was unable to speak to the general practice of other attorneys in his law firm or at Travelers Insurance with respect to preventing inadvertent disclosures. (Docket No. 162, at 16). While he represented that in the normal course of events there would be an attorney who would review documents before they were sent to opposing counsel, there was no attorney with knowledge of the case who reviewed the documents in this instance

> because the disclosure took place during the holidays, when a number of attorneys and staff were out of the office. Id. at 16–17.
>
> An attorney's responsibilities, however, do not take a holiday. Nothing prevented Mr. Joyal from asking another attorney in the office to review what the substitute secretary planned to forward to Plaintiff's counsel and to call him (even on his holiday vacation) in order to properly vet the disclosure before submission to his opponent. Alternatively, nothing prevented him from seeking an extension until after his holiday vacation at which time he could have personally reviewed the challenged documents.

*Wise,* 2013 WL 4829227, at *2-3 (Nora Barry Fischer, J.). Here, as in *Wise,* the Defendants' proffer provides no guidance as to whether – or to what extent – there was any attorney oversight of the document production process.

Defendants also assert that the documents in question contained neither a designation concerning their authorship nor any other clear indicia of attorney work product and, therefore, (they argue) the defense should not be blamed for accidentally producing what appeared to be discoverable material. The Court does not have before it copies of the subject documents, so it is hamstrung in any effort to fully and fairly assess this argument. That said, according to the Plaintiff, the subject materials apparently included: (a) handwritten notes entitled "Tpr William Gilson – Cross"; (b) handwritten notes of an interview with Investigator Noce; and (c) handwritten notes on a piece of correspondence addressed to arbitration counsel herself. Plaintiff posits (somewhat persuasively) that an attorney reviewing these materials would have (or should have) recognized them as actual or at least likely attorney work product.

Even if Defendants are correct that the subject notes bear no profoundly obvious indicia of attorney work product, this does not necessarily help their cause for purposes of a Rule 502(b) analysis. In a case fairly analogous to this one, the Eastern District of Pennsylvania held that an inadvertent disclosure of privileged documents did not warrant claw-back relief where the disclosure was attributable to the attorney's failure to label her own notes as containing privileged material.

7

In *Carlson v. Carmichael*, Civil Action No. 10-3579, 2013 WL 3778356 (E.D. Pa. July 19, 2013), the court was called upon to decide whether the U.S. Attorney's Office, serving as defense counsel, had waived its right to assert the attorney-client and work-product privileges with regard to certain documents inadvertently disclosed to the plaintiff during discovery. The papers in question consisted of eight (8) pages of handwritten notes which the AUSA originally assigned to the case had prepared as a memorialization of an interview that she had conducted of one of the defendants. The AUSA who later took over the defense of the case had accidentally produced the notes during discovery based on his errant belief that the notes had been generated by the defendant himself rather than by counsel.

In conducting its Rule 502(b) analysis, the court focused on the disputed issue of whether the "U.S. Attorney's Office had failed to take reasonable steps to prevent the disclosure of the notes in light of the number of documents it had to review, the time it had to review them, and other similar, commonsense factors." 2013 WL 3778356, at *2.[3] The court answered this question in the affirmative and held, accordingly, that any privilege had been waived. *Id.* at *3. In relevant part, the court noted that:

> the government attorney with initial responsibility for this case[ ] failed to label her notes as "confidential" or to identify herself as their author... Moreover, the Defendants acknowledge that "[i]t is not known how the notes ended up in [the] folder" entitled "Documents from Carmichael," ... and Defendants appear to have no information as to whether or how anyone at the U.S. Attorney's Office sequestered privileged documents from non-privileged ones. Finally, other relevant factors disfavor finding that the U.S. Attorney's Office took reasonable precautions here. In particular, the Defendants produced fewer than 600 pages of

---

[3] Notably, the court placed the burden of proof on the plaintiff on the grounds that "[a] party who claims that waiver has occurred 'has the burden of proof as to waiver.'" 2013 WL 3778356, at *1 (quoting *Rhoads Indus., Inc. v. Bldg. Material Corp. of Am.*, 254 F.R.D. 216, 223 (E.D. Pa. 2008)). However, courts in our District have placed the burden of proof on the party moving for claw-back relief under Rule 502(b). *See Wise*, 2013 WL 4829227, at *2 ("The disclosing party has the burden of proving that each of the three elements of rule 502(b) has been met."); *Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, Civil Action No. 09-261, 2009 WL 3319820 at *2 (W.D. Pa. Oct. 14, 2009) (Ambrose, J.) (same) (*citing United States v. Sensient Colors Inc.*, 2009 WL 2905474, *3 (D.N.J.2009)).

documents in February 2013, and counsel had three months to review these
documents before producing them.

*Carlson,* 2013 WL 377836, at *2 (internal citations to the record omitted)(second and third alterations in the original).

The *Carlson* court considered, but rejected, the defendants' argument that the inadvertent disclosure did not stem from a lack of preventative measures but from unusual facts – namely, the departure of the original defense attorney from the U.S. Attorney's Office and the transfer of the case file to another AUSA. *See id.* at *3 ("Having to deal with matters in the wake of lawyers' moves is hardly unusual, shocking or confusing."). The court observed that subsequent defense counsel "never would have produced the notes if any steps had been taken to guard against their disclosure, such as marking them as privileged, identifying the author, ensuring that they were removed from the folder entitled 'Documents from [Defendant] Carmichael,' or in some other way alerting for the need to exercise caution." *Id.* Moreover, notwithstanding defense counsel's representation that he had personally reviewed every document before producing them, the court found that this type of review could not constitute a "reasonable step" that would prevent waiver in view of the fact that counsel's review had been "rendered ineffective before it even began because of the actions of others in his office, actions which left him without any reasonable chance of discovering that the notes were privileged." *Id.* at *3. The court in *Carlson* concluded with the following observation:

> Even though a newly assigned counsel may not have personally dropped the proverbial ball, the arrival of replacement counsel cannot afford a party a "Mulligan" ... with respect to analyzing whether the party, as opposed to a specific lawyer, may claim the privileges' protections. To hold otherwise would, bizarrely, reward the turnstile staffing of litigation matters that can hardly be something to be encouraged for the fair and expeditious handling of cases.

2013 WL 3778356, at *3.

In this case, the inadvertent disclosure of arbitration counsel's handwritten notes may similarly be attributed to the fact that the notes were not sequestered from the rest of PSP's file, identified as attorney work product, or otherwise designated as containing protected material. Seemingly, here – as in *Carlson* – the OAG's review of the documents may have been "rendered ineffective before it even began." 2013 WL 3778356, at *3. Moreover, unlike the AUSA in *Carlson*, who represented that he had personally reviewed each document prior to its production, defense counsel in the case at bar has offered no representation as to any attorney involvement in the document production process. Counsel's only representation is that "OAG personnel" were involved in reviewing the documents, but there is no proffer as to which personnel reviewed the documents or how those individuals are supervised or trained to recognize protected material.

The third Rule 502(b) factor requires that the Court consider whether the Defendants promptly took reasonable steps to rectify the inadvertent disclosure. Although Plaintiff complains that the Defendants did not seek retrieval of the subject documents until nearly eleven (11) months after their production, this ignores the claim that the Defendants were not earlier aware of the specific nature and authorship of the documents. Defendants maintain that it was only when the OAG contacted the PSP in October 2013 (after the notes had surfaced during an October 11, 2013 deposition and then became the topic of a further discovery request) that the Defendants first realized the confidential nature of the subject documents. Defense counsel wrote a letter shortly thereafter asking that these materials be returned. On balance, it would seem that Defendants acted in a reasonably prompt manner to cure the inadvertent disclosure.

Defendants posit that consideration of additional factors, such as the number of inadvertent disclosures, the extent of the disclosure, and the overriding interests of justice weigh in favor of the relief they are requesting. They note that this dispute concerns approximately

twenty-eight pages of documents out of hundreds of pages that were produced. To date, there have been no other known incidents of privileged materials being inadvertently shared. Defendants further posit that the interests of justice favor their claw-back request inasmuch as the subject notes give the Plaintiff "a window into the inner workings of the defense case and how it is likely to proceed." (Defs.' Mot. ¶ 10.) These factors cut in Defendants' favor.

On the other hand, other factors support a finding of waiver. For example, there is no indication here that Defendants were under any unusual time constraints in responding to the Plaintiff's discovery request such that they were prevented from performing a more thorough review of the documents in question.[4] Moreover, the production of hundreds of pages of documents, though substantial, is not an unusually large amount of discovery. *Cf. Carlson,* 2013 WL 3778356, at *2 (court noting that one of the factors "disfavor[ing] [a] finding that the U.S. Attorney's Office took reasonable precautions" to prevent the inadvertent disclosure of privileged material was the fact that the defendants had produced fewer than 600 pages of documents and had had three months to review these documents before producing them).

## IV. <u>CONCLUSION</u>

The issue before the Court lies at the intersection of competing and important professional obligations and considerations for the just disposition of litigation.

On the one hand is the principle that parties and their lawyers have a baseline obligation and duty of care in performing their duties, including the identification and segregation of documents for production. On that front, the Defendants have not yet placed before the Court a sufficient factual record, including the documents themselves, that would permit the Court to conclude that reasonable steps had been taken to protect the documents at issue from disclosure,

---

[4] Neither party has indicated when the discovery request was made, and it is unclear on the present record how much time was afforded the OAG in responding to that request.

11

including the nature and degree of lawyer supervision, and the degree of obviousness of the protected nature of the documents when they were identified and produced.

On the other hand, there is no dispute that the production of these documents was unintended and inadvertent, that they are almost certainly protected work product, that based on the description of the documents, a lawyer looking at them (including Plaintiff's counsel) would have at least suspected that they were protected, and that when defense counsel learned about that production in the midst of a deposition, he took a reasonable period of time to consider the matter and issued a prompt enough demand for their return. The attorney work product doctrine embodies an important principle, namely that the work of lawyers is for the sole benefit of the interests of their client and is not ammunition for an adversary in litigation, absent the most compelling necessity for its production as provided by Fed. R. Civ. P. 26.[5]

In some ways, what is before the Court is an unfortunate combination of a very significant slip up by the Defendants and a "gotcha" maneuver by the Plaintiff, particularly when it is not contested that the revelation of otherwise protected documents was not intended and the receiving lawyer likely should have known that they were protected. The Court therefore believes that the proper course here is to permit the Defendants to supplement their submissions as to the pending Motion, if they can do so consistent with Fed. R. Civ. P. 11, at the time they submit their Motion for Summary Judgment. Plaintiff may respond further in conjunction with his Summary Judgment response, and the Court will consider the ultimate disposition of this Motion when it hears oral argument on that impending Summary Judgment Motion.

---

[5] The Court is loath to get into the business of parsing how lawyers should label or mark their meeting or working notes, or keep their files, or manage their law offices. From the Court's perspective, when a disclosure is inadvertent, and when the documents would appear to a lawyer recipient to at least raise the high likelihood that they are protected, the question then becomes whether the procedures in place at the producing law office are so devoid of reasonableness that the client of the producing lawyer(s) should properly pay the price for that miscue, by allowing the receiving, opposing counsel to retain them.

An appropriate Order follows.

*[signature]*
Mark R. Hornak
United States District Judge

Dated: January 30, 2015

cc: All counsel of record.

13